**Opinion issued August 5, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00736-CR

———————————

**JAIME DELGADILLO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from Criminal District Court No. 3**
**Tarrant County, Texas**
**Trial Court Case No. 1771820**

---

## MEMORANDUM OPINION

A jury found Appellant Jaime Delgadillo guilty of three counts of the third-degree felony offense of continuous violence against the family and assessed his

punishment at ten years' incarceration on each count.[1]  The trial court entered judgment in accordance with the jury's verdicts and ordered Delgadillo's sentences to run concurrently.  In his first four issues, Delgadillo argues the trial court erred by (1) incorrectly defining the terms intentional and knowing in the jury charge, (2) "selectively giving a converse charge on one of the underlying assaults and not the other," (3) improperly instructing the jury on the lesser included offense of assault and directing the jury to find Delgadillo guilty of the lesser included offense, and (4) failing to instruct the jury to acquit Delgadillo if they believed he acted in self-defense.  In his fifth issue, he argues the trial court's judgment violates double jeopardy because all three convictions are based on the same underlying assault.

The State argues Delgadillo was not harmed by any alleged errors in the jury charge, but it concedes that Delgadillo's three convictions for continuous family violence, each predicated on the same assault, violate his double jeopardy right against multiple punishments. The State thus requests that we vacate Delgadillo's convictions for counts one and three and retain his conviction for count two.

---

[1]    Pursuant to its docket-equalization authority, the Texas Supreme Court transferred this appeal from the Second Court of Appeals to this Court.  *See* Misc. Docket No. 23-9079 (Tex. Sept. 26, 2023); TEX. GOV'T CODE § 73.001(a) (authorizing transfer of cases).  We are unaware of any conflict between the precedent of that court and of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

We vacate the portion of the trial court's judgment of conviction as to counts one and three. Because we find no reversible error, we affirm the judgment of conviction as to count two.

## Background

Delgadillo was charged by indictment with three counts of the third-degree felony offense of continuous violence against the family. A person commits the offense of continuous violence against the family if, during a period that is twelve months or less in duration, the person two or more times engages in conduct that constitutes an offense of assault causing bodily injury to a family or household member, or a person with whom the defendant had a dating relationship. *See* TEX. PENAL CODE § 25.11(a). The three counts against Delgadillo stem from an incident on March 14, 2023 involving Delgadillo, his girlfriend Nicole Reyes, his father Juan Delgadillo, and his niece, H.V., and a separate incident on June 27, 2022 involving Delgadillo and his wife Ashton Barrera.

Count one alleged that Delgadillo committed continuous violence against the family by intentionally or knowingly causing bodily injury to H.V. by biting her on March 14, 2023, and intentionally or knowingly causing bodily injury to Barrera on June 27, 2022 by grabbing her throat. Count two alleged that Delgadillo committed continuous violence against the family by intentionally or knowingly causing bodily injury to Reyes by pushing or striking her with his hand or by pulling her hair on

3

March 14, 2023, and intentionally or knowingly causing bodily injury to Barrera on June 27, 2022 by grabbing her throat. And count three alleged that Delgadillo committed continuous violence against the family by intentionally or knowingly causing bodily injury to Juan by striking him with his hand on March 14, 2023, and intentionally or knowingly causing bodily injury to Barrera on June 27, 2022 by grabbing her throat.

Barrera, Reyes, Juan, H.V., and Delgadillo testified at Delgadillo's trial.[2]

## A.    Ashton Barrera

Delgadillo's ex-wife, Barrera, testified that she and Delgadillo dated on and off for four years before they were married in Las Vegas in February 2022. When they returned to Texas, Delgadillo and Barrera moved in with Delgadillo's father, Juan Delgadillo. Delgadillo's teenaged niece, H.V., also lived in Juan's home. According to Barrera, Delgadillo started drinking alcohol as soon as they got home from Las Vegas and Delgadillo went on a two-day drinking binge before he returned to Juan's house. Barrera, who had never seen Delgadillo drunk before, testified that he was "verbally and mentally abusive" towards everyone when he was drinking. Barrera testified that Delgadillo, who was drunk, was yelling at his mother on the phone after he returned home on February 15, 2022, and Barrera took the phone

---

[2]    The State also presented testimony from Officer Brandon Rhea, Officer Cody Scales, Mary Ann Contreras, Katie Rocha, Aaron Schoech, John Rivera, Myles Brown, Amanda Littiere, and Kathryn Jacob, a domestic violence expert.

from Delgadillo and apologized to Delgadillo's mother for his rude behavior. Delgadillo stood up and punched Barrera in the face, causing the phone to fly out of her hand. When asked why he hit her, Barrera testified that he was drunk, and she assumed he was angry. Juan, H.V., Delgadillo's brother Christopher, and Christopher's girlfriend were also at Juan's house at the time. After telling Juan that Delgadillo was drunk and had hit her, Barrera left and stayed with her sister for a few days. This was the first time Delgadillo had assaulted Barrera. Although she did not know what transpired after she left Juan's house, Barrera knew that Delgadillo was arrested that night because she bailed him out.

Barrera testified that Delgadillo became violent with her on two more occasions. In March 2022, Delgadillo bit Barrera's inner thigh and punched her in her collarbone after she rejected his sexual advances when he was drinking. Barrera left and stayed with her mother for a month before moving back in with Delgadillo. She learned that she was pregnant in late April 2022.

On June 27, 2022, Delgadillo, who had worked the nightshift, came home between 6 a.m. and 7 a.m. and he accused Barrera of cheating on him. According to Barrera, Delgadillo began drinking early that morning and he tried to argue with her until he eventually fell asleep in the bedroom. Barrera, who was four months pregnant, had not slept much the night before, and she fell asleep on the couch. When Delgadillo woke up, he dragged Barrera to their room by her wrist, began

5

insulting her, and would not let her leave. Barrera laid down on the bed away from Delgadillo, but he pulled her by the shoulder until she fell flat on her back. Then, he jumped on Barrera's stomach, put his hands on her throat, and squeezed until she could not breathe. She testified that Delgadillo placed one hand on the base of her neck and pushed her downward, wrapped the other hand around her throat, and squeezed it for about a half a minute until she was able to push him off of her. Barrera could not breathe while Delgadillo had his hands on her throat, and she testified that it hurt when he squeezed.

After she pushed Delgadillo away, Barrera ran to the bathroom where she started hyperventilating and threw up. Delgadillo followed her to the bathroom and shoved her against the wall, but she was able to get away again by pushing him into the bathtub. Barrera ran through the kitchen and into the backyard. Photographs were admitted into evidence reflecting scratches on Barrera's neck from the attack.

Barrera, who had moved out of Juan's home and obtained a protective order against Delgadillo in October 2022, gave birth to their son in November 2022. Barrera filed for divorce in December 2022, and the divorce was finalized in April 2023.

On cross-examination, Barrera testified that Delgadillo began dating Nicole Reyes when Barrera and Delgadillo were separated for eight months in 2021. On June 14, 2022, Reyes and Delgadillo's sister confronted Barrera at Juan's home.

6

According to Barrera, Reyes hit her in the face and chest and Delgadillo's sister tazed her in the back. Barrera testified that she sustained facial injuries and tazer burns during the altercation. She denied having any marks or scratches on her neck before Delgadillo choked her on June 27, 2022, and she testified that Reyes never hit her neck.

## B.     Nicole Reyes

Nicole Reyes testified that she and Delgadillo met at work in 2021, and they had been dating on and off for three years. According to Reyes, Delgadillo had been sober for four years when they first started dating. Reyes testified that Delgadillo broke up with her in December 2021, but they got back together on January 1, 2022. They broke up again four days later when Reyes learned that Delgadillo was also dating Barrera. Reyes did not hear from Delgadillo again until he called her in February 2022 and asked her to pick him up at his mother's home. After she picked up Delgadillo, they drove to a convenience store, and that was the first time Reyes saw Delgadillo purchase alcohol. They went back to Reyes' place, and they hung out until 7 a.m. the next morning when Reyes drove Delgadillo back to his mother's home. Reyes and Delgadillo argued about Delgadillo's marriage to Barrera and Delgadillo, who was practically incoherent, became upset and started to cry on the way to his mother's home. Reyes testified that Delgadillo pulled her hair, causing her pain, while she was driving, and she hit him.

7

Delgadillo contacted Reyes a week and a half later, and they began dating again. According to Reyes, Delgadillo would go back and forth between her and Barrera. In April 2022, Reyes learned that she was pregnant with Delgadillo's child, and she told him about the pregnancy a few days later. She did not hear from Delgadillo again until June 2022.

Reyes testified that she was friends with Delgadillo's sisters and H.V., and in mid-June 2022, she went with Delgadillo's sister Adriana to Juan's house because Adriana was concerned about her daughter, H.V. According to Reyes, Adriana confronted Delgadillo and Barrera and told them she did not want them living in the same home as H.V. Adriana, Reyes, and Barrera argued, and Reyes claimed that the argument turned physical when Barrera charged at her and pulled her hair. Reyes hit Barrera in the face and at some point, Adriana tazed Barrera. According to Reyes, the police were called but no one was arrested. Reyes testified that she never grabbed Barrera's throat or tried to strangle Barrera.

Reyes and Delgadillo got back together in September 2022. They were separated when their son was born in December 2022, but they reunited in January 2023. Delgadillo told Reyes and his family that he had stopped drinking alcohol. Although she and Delgadillo were not living together, Reyes regularly stayed at Juan's house with Delgadillo so he could help her with the baby.

8

On March 14, 2023, during the morning, Delgadillo got into an argument with Reyes. Delgadillo spent the rest of the day secretly drinking alcohol. Delgadillo's sister and her children came over to Juan's house for a family celebration later that day, but they were told to leave when Reyes realized that Delgadillo had been drinking. According to Reyes, Delgadillo blacks out when he drinks, loses control, and lashes out. Reyes testified that Delgadillo becomes fixated on something upsetting, and he will hit "anybody that's pushing towards him," including someone who is standing in front of him and trying to console him. According to Reyes, Delgadillo "would see it as aggression, so he would—he would try to defend, I guess, he would see it as defending himself."

Reyes testified that she asked Delgadillo to go into his room to lay down to diffuse the situation, but he refused to go. Instead, Delgadillo followed Reyes into H.V.'s room where she was putting the baby down for the night. H.V. told Delgadillo that she did not want him in her room, and she told him to go to his room, but he did not leave. Delgadillo became upset when Juan intervened, and he started crying and talking about his past childhood traumas. They were able to convince Delgadillo to leave H.V.'s room, and Juan continued to badger Delgadillo about his drinking as Delgadillo walked down the hall to his room.

Reyes testified that Juan and Delgadillo were standing in the doorway to Delgadillo's room, and when she tried to retrieve something from the bedroom,

Delgadillo must have perceived her conduct as a "charge or threat," and he pushed her in the face, giving her a nosebleed and causing her to fall to the floor. Reyes testified that it hurt when Delgadillo hit her and made her feel "a little disoriented." When Reyes stood up, everyone was yelling, and when Delgadillo leaned towards them, they grabbed him and tried to "wrestle him to the ground." According to Reyes, they "were just all in a tussle and rolling around and just trying to figure out who was throwing what just to stop." Reyes testified that they were just trying to keep Delgadillo from hurting anyone else and they told him to stay on the ground, but he refused and kept getting back up.

Reyes testified that Delgadillo and Juan were angry, and she saw Delgadillo hit Juan in the head two or three times when the two men were tussling in the hallway. She testified that H.V. tried to get Delgadillo on the ground so they could sit on top of him to calm him down, and Delgadillo bit H.V. during the struggle, causing her to bleed. Reyes told H.V. to call the police because she knew that they needed help to diffuse the situation. H.V. called 911, but Reyes had to take the phone and talk to the operator because H.V. was crying and hysterical. Delgadillo, who was being held down on the kitchen floor, managed to grab Reyes' hair while she was talking to the 911 operator. A recording of the 911 call was admitted into evidence. On the call, Reyes is heard crying and telling the 911 operator that

10

Delgadillo is pulling her hair. Reyes testified that she gave the phone back to H.V. so that she could help Juan restrain Delgadillo until the police arrived.

The trial court admitted into evidence photographs that the police had taken of Reyes' injuries, including her bloody nose and the purported bald spot on her head where Delgadillo had pulled out a clump of her hair. Exhibit 51, which was also admitted into evidence, shows Delgadillo clutching a clump of Reyes' hair while handcuffed.

## C. Juan Delgadillo

Juan Delgadillo, Delgadillo's father, testified that Barrera and Delgadillo got into an argument at Juan's home on February 15, 2022, and she left. According to Juan, Delgadillo, who had been drinking, wanted to follow Barrera, but Juan and Delgadillo's brother Christopher grabbed Delgadillo to prevent him from leaving because he was angry, and they did not know what Delgadillo was planning to do. Christopher called the police, and Delgadillo was arrested that night.

Juan testified that the police were called to his home on June 27, 2022, but he had been at work most of the day, and he only heard Delgadillo and Barrera arguing in their bedroom.

The police were also called to Juan's home on March 14, 2023 when he, H.V., Reyes, Delgadillo, and Reyes' and Delgadillo's infant son were home. Juan testified that he does not want Delgadillo to drink in his home because "sometimes he drinks

11

a little too much and then he loses control," like he did that day. According to Juan, Reyes noticed that Delgadillo had been drinking that day, and she took his bottle of alcohol and gave it to Juan. Delgadillo was upset that Reyes had taken away his beverage, and the two began arguing about his drinking. Juan testified that the argument turned physical when Reyes and Delgadillo started to "struggle" and "shove each other." According to Juan, he tried to separate them, but Delgadillo was very angry, and he "wanted to fight" Reyes and Juan. Juan testified that he and Reyes grabbed Delgadillo and wrestled him to the ground to prevent Delgadillo from hitting them, but Delgadillo managed to free himself enough to punch Juan in the head, and he bit H.V.'s hand when she tried to help restrain him. Juan testified that he told H.V. to call the police, and when the police arrived, they were still holding Delgadillo down on the kitchen floor. When asked if his head hurt from Delgadillo hitting him, Juan testified, "Well, I don't know because of we were struggling down on the ground and I don't know if it was because maybe I hit myself on the ground because we were struggling."

**D.     H.V.**

H.V., Delgadillo's niece, testified that she was living in Juan's home with Juan, Delgadillo, and Barrera in June 2022. On June 27, 2022, H.V. walked outside to let her dog out and Barrera went with her. According to H.V., Barrera was crying and out of breath, and she was "trying to talk but she couldn't."

12

H.V. testified that Reyes took her to get her nails done on March 14, 2023, and when they returned to Juan's home, they noticed that Delgadillo had been drinking even though he was not supposed to drink. H.V. testified that Delgadillo hit Reyes in the face with his hand and Reyes' nose started to bleed. When asked if Delgadillo hit Reyes in the face on accident or on purpose, H.V. testified that she could tell Delgadillo hit Reyes in the face on purpose "[b]ecause he was looking at her and he just seemed mad." According to H.V., Juan and Reyes tried to restrain Delgadillo to keep him from leaving, and Delgadillo hit Juan in the head after Juan and Reyes had pulled Delgadillo to the ground. H.V. testified that she tried to help Juan and Reyes restrain Delgadillo by climbing on top of Delgadillo and pulling him back to the ground. During the struggle, Delgadillo bit H.V.'s hand when she wrapped her hands around his face. H.V. testified that she did not think that Delgadillo realized that it was her hand. She testified that no one tried to restrain Delgadillo until after he hit Reyes in the face.

### E.  Jaime Delgadillo

Delgadillo testified that he had so much to drink on February 15, 2022 that he did not remember pulling Reyes' hair when she drove him back to his mother's home or punching Barrera in the face later the same day. He also did not remember scuffling with his brother and Juan when they stopped him from following Barrera in his car in February 2022, or being arrested after his brother's girlfriend called 911.

13

Delgadillo also did not remember biting Barrera's thigh or punching her in the chest when she rejected his sexual advances in March 2022, but he apologized to Barrera after she showed him a photograph of a bruise on her thigh.

When asked if he touched Barrera when they were arguing on June 27, 2022, Delgadillo testified that Barrera yells and gets angry and he tried to calm her down, but he denied putting his hands on her throat or trying to choke her.

Delgadillo testified that he was intoxicated on March 14, 2023, and he only remembered some things about the incident. He did not remember punching Juan or biting H.V.'s hand, but he thought Juan had punched him. Delgadillo denied punching Reyes in the nose. When asked if he felt "threatened by the people that were trying to keep you in the house," Delgadillo testified that he felt threatened at the time because Reyes had "also put her hands on me multiple times" and his father, who had hit Delgadillo multiple times since he was a child, was "putting his hands" on Delgadillo.

When asked what made him "feel particularly threatened on that day at that time," Delgadillo testified that "[e]verything going on" in his life was stressful, including the fact that he had just relapsed and had two young children with two different women. He denied that he "put [his] hands on them first" and stated that Reyes had put her hands on him and that is when they "wound up on the floor." Delgadillo testified that he fought them to remove himself from the situation and to

14

protect himself from physical harm. He testified that when he tried to remove himself from the situation, his family prevented him from leaving. Delgadillo denied that he "set out" to intentionally or knowingly assault Reyes, H.V., or Juan in March 2023. On cross examination, Delgadillo testified:

> Q.    And you said you did not hit [Reyes] in the face; is that right?
>
> A.    Right.
>
> . . .
>
> Q.    You're not saying that you hit [Reyes] in the face because you were protecting yourself. You don't remember why you did— why you did that or doing it at all; isn't that right?
>
> A.    Yes.

## Double Jeopardy

In his fifth issue, Delgadillo argues that his three convictions for continuous violence against the family—count one, count two, and count three—violate his double jeopardy right against multiple punishments because each conviction is predicated on the same June 27, 2022 assault against Barrera, and he asks that we vacate two of the convictions. The State agrees that Delgadillo's convictions for counts one, two, and three violate Delgadillo's double jeopardy right, and it requests that we retain Delgadillo's conviction for count two and vacate his convictions for counts one and three.

## A.    Standard of Review and Applicable Law

The Double Jeopardy Clause provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V. This guarantee was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 796 (1969); *see also* U.S. CONST. AMEND. XIV.

There are three types of double jeopardy claims: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). When a defendant is convicted of two or more crimes in a single trial, as in the present case, a multiple-punishments case is involved. *See Eubanks v. State*, 326 S.W.3d 231, 243 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). In a multiple-punishments double-jeopardy case, the relevant inquiry is always whether the legislature intended to permit multiple punishments. *Loving v. State*, 401 S.W.3d 642, 646 (Tex. Crim. App. 2013); *see also Gonzales v. State*, 304 S.W.3d 838, 845 (Tex. Crim. App. 2010) ("[The Double Jeopardy Clause] also protects [a defendant] from being punished more than once for the same offense in a single prosecution.").

Penal Code Section 25.11, the continuous-violence-against-the-family statute, expressly states that unless certain statutory conditions are met, "[a] defendant may

not be convicted in the same criminal action of another offense the victim of which is an alleged victim of the [continuous-violence offense] and an element of which is any conduct that is alleged as an element of the [continuous-violence offense] . . . ." TEX. PENAL CODE § 25.11(c). By including this provision, "the legislature indicated its clear intent: a person cannot be convicted in the same criminal action of continuous violence against a victim and also be convicted of additional, discrete instances of bodily-injury assault against that same victim if those discrete assaults could have been charged as part of the continuous count." *Birdo v. State*, No. 02-22-00142-CR, 2023 WL 4630627, at *5 (Tex. App.—Fort Worth July 20, 2023, no pet.) (mem. op., not designated for publication); *see also Ellison v. State*, 425 S.W.3d 637, 647–48 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding defendant's double jeopardy right against multiple punishments violated when defendant, who had pleaded guilty to offense of continuous family violence, was indicted for and convicted of second charge of continuous family violence because both charges were predicated on "exact same two instances of bodily-injury assault against his girlfriend Worstell, with no indication that a different time period was at issue").

**B. Analysis**

Delgadillo was charged with three counts of continuous violence against the family. The same June 27, 2022 assault against Barrera served as the second predicate offense in each count—count one, count two, and count three. The

17

repeated use of the June 27, 2022 assault against Barrera constitutes an "impermissible overlap" between the three counts. *Ellison*, 425 S.W.3d at 648. Delgadillo's convictions and punishments for the three counts of continuous family violence predicated on the same June 27, 2022 assault against Barrera thus violated his double jeopardy right against multiple punishments. *Id.*; *see also Aguilar v. State*, No. 02-22-00271-CR, 2023 WL 6631526, at *5 (Tex. App.—Fort Worth Oct. 12, 2023, pet. ref'd) (mem. op., not designated for publication) (holding defendant's double jeopardy right against multiple punishments violated when defendant convicted and punished for one count of continuous family violence and one count of assault on family member with previous family-violence conviction when both counts were predicated on same underlying assault).

The remedy for impermissible multiple convictions and punishments is to retain the most serious offense and vacate the other. *Littrell v. State*, 271 S.W.3d 273, 279 n.34 (Tex. Crim. App. 2008). Generally, the "most serious offense" is the offense of conviction for which the "greatest sentence was assessed." *Bien v. State*, 550 S.W.3d 180, 188 (Tex. Crim. App. 2018). When the sentences are the same for the multiple convictions, courts may look to other factors, such as the degree of felonies, whether there were deadly weapon findings, and whether fines or restitution were imposed for only one of the convictions. *Id.* When, however, the standard tiebreakers do not demonstrate which conviction is most serious, it is

appropriate to "give the local prosecutor the option to choose which conviction to retain." *Id.* (quoting *Bignon v. State*, 252 S.W.3d 360, 374 (Tex. Crim. App. 2008) (Keller, P.J., dissenting)). When the State informs the appellate court of its preference in its briefing, and remand is not required to resolve the issue, this solution is preferable. *See id.*; *see also Aguilar*, 2023 WL 6631526, at *5 n.14 (recognizing appellate court's ability to defer to State's preference when expressed in State's briefing).

Delgadillo was convicted of three counts of the third-degree felony offense of continuous family violence and the jury assessed his punishment at ten years' confinement for each count. *See* TEX. PENAL CODE § 25.11(e) (stating offense under Section 25.11 is third-degree felony). There was no deadly weapon finding as to any count, and no fines or restitution were imposed. Thus, none of the standard "tiebreakers" apply. *See Bien*, 550 S.W.3d at 188. The State requests that we retain Delgadillo's conviction for count two and vacate his convictions for counts one and three. Delgadillo did not express a preference with respect to which count we retain.

We sustain Delgadillo's fifth issue, and we vacate his convictions for counts one and three. Our remaining opinion is thus limited to the remaining count two.

### Jury Charge Error

In his first, second, third, and fourth issues, Delgadillo argues the jury charge contains harmful error because (1) it incorrectly defines the terms intentional and

19

knowing, (2) gives a "converse charge on one of the underlying assaults and not the other," (3) improperly instructs the jury on the lesser included offense of assault causing bodily injury to a family or household member and directs the jury to find Delgadillo guilty of the lesser included offense, and (4) the self-defense instruction did not require the jury to acquit Delgadillo of the offense of continuous violence against the family if they believed he acted in self-defense.

## A.    Standard of Review

We review potential jury charge error using a two-step review to determine whether reversal is required. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). We first decide whether error exists in the charge. *Id.* If we determine an error exists, we next determine whether sufficient harm resulted from the error requiring reversal. *Id.* The level of harm necessary for reversal depends on whether the appellant properly objected to the error. *Id.* at 743–44. When, as here, an appellant fails to preserve error, we review the charge error under the "egregious harm" standard articulated in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). *See Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza*, 686 S.W.2d at 171).[3]

---

[3]    When the defendant properly objected to the charge, we review charge error for "some" harm. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). "'Some harm' means actual harm and not merely a theoretical complaint," and we will reverse only

"Egregious harm is a high and difficult standard to meet, and such a determination must be borne out by the trial record." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (internal quotation omitted). Neither party bears the burden to show harm or lack thereof. *Id.* Rather, the appellate court must examine the relevant portions of the entire record to determine whether an appellant suffered actual, as opposed to theoretical harm, as a result of the charge error. *Id.*

When assessing whether an appellant suffered egregious harm as a result of a charge error, courts consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Id.* (citing *Almanza*, 686 S.W.2d at 171). Errors that result in egregious harm are "those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011); *see also Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) (stating egregious harm requires showing defendant was "deprived of a fair and impartial trial"); TEX. CODE CRIM. PROC. art. 36.19 (stating trial court's judgment should not be reversed unless record shows jury charge error was calculated to injure

"if the error was calculated to injure the rights of the defendant." *Jordan*, 593 S.W.3d at 347.

21

defendant's rights, or unless record demonstrates defendant did not have fair and impartial trial).

**B.      Applicable Law**

It is the trial court's responsibility to deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14; *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). The purpose of the charge is to inform the jury of the applicable law and guide them in its application to the facts of the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (internal quotations omitted).

A proper jury charge consists of an abstract statement of the law and the application paragraphs. *Alcoser v. State*, 596 S.W.3d 320, 332 (Tex. App.—Amarillo 2019) (stating that "a jury charge should begin with an abstract paragraph defining the elements of an offense, or defining significant words or phrases, followed by an application paragraph that applies that law to the facts of the particular case"), *rev'd on other grounds*, 663 S.W.3d 160 (Tex. Crim. App. 2022). The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Id.* at 328. The application paragraphs apply the "pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). The charge's

application paragraphs, not the abstract portion, authorize a conviction. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Because the application paragraphs specify the factual circumstances under which the jury should convict or acquit, they are often referred to as the "heart and soul" of the jury charge. *Vasquez*, 389 S.W.3d at 367.

## C. Jury Charge

The abstract paragraphs in the jury charge defined the offenses of continuous violence against the family and the lesser included offense of assault, and the mental states required to commit an assault as follows:

> A person commits the offense of continuous violence against the family if during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an offense of assault causing bodily injury to a family or household member, or a person with whom the defendant had a dating relationship.
>
> A person commits an assault if the person intentionally or knowingly causes bodily injury to another, including the person's spouse.
>
> "Bodily injury" means physical pain, illness or any impairment of physical condition.
>
> . . . .
>
> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of

23

his conduct when he is aware that his conduct is reasonably certain to cause the result.

The abstract portion also instructed the jury on the law of self-defense:

Upon the law of self-defense, if you all agree the [S]tate has proved, beyond a reasonable doubt, each of the elements listed above for the offense of continuous violence against the family, you must next consider whether the defendant's use of force was made in self-defense.

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonabl[y] believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.

The use of force against another is not justified in response to verbal provocation alone, or if the actor provoked the other's use or attempted use of unlawful force, unless the actor abandons the encounter, or clearly communicated to the other his intent to do so reasonably believing he cannot safely abandon the encounter, and the other nevertheless continues or attempts to use unlawful force against the actor.

The defendant is not required to prove self-defense. Rather, the State must prove, beyond a reasonable doubt, that self-defense does not apply to the defendant's conduct.

"Reasonable belief" means a belief that an ordinary and prudent person would have held in the same circumstances as the defendant.

The application paragraphs for count two then states:

Now, if you find from the evidence beyond a reasonable doubt that the defendant, Jaime Delgadillo, in Tarrant County, Texas, during a period of time that is 12 months or less in duration, did engage in conduct that constituted assault bodily injury, specifically: on or about the 14th day of March 2023, did intentionally or knowingly cause bodily injury to Nicole Reyes, a person with whom the defendant had a dating relationship, by pushing or striking her with the defendant's hand or by pulling her hair, and on or about the 27th day of June 2022, the defendant, did intentionally or knowingly cause bodily injury to Ashton

24

Barrera, a member of the defendant's household, by grabbing her throat, then you will find the defendant guilty of the offense of continuous violence against the family as charged in Count Two of the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of continuous violence against the family as charged in Count Two of the indictment and say by your verdict "Not Guilty".

Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of March, 2023, the defendant, Jaime Delgadillo, did intentionally or knowingly cause bodily injury to Nicole Reyes, a person with whom the defendant had a dating relationship, by pushing or striking her with the defendant's hand or by pulling her hair, but you further find from the evidence, or you have a reasonable doubt thereof, that viewed from the standpoint of the defendant, Jaime Delgadillo, at the time, from the words or conduct, or both, of Nicole Reyes, it reasonably appeared to the defendant that his person was in danger of bodily injury and there was created in his mind a reasonable expectation or fear of bodily injury from the use of unlawful force at the hands of Nicole Reyes, and acting under such apprehension and reasonably believing that the use of force on his part was immediately necessary to protect himself against Nicole Reyes' use or attempted use of unlawful force, the defendant did intentionally or knowingly cause bodily injury to Nicole Reyes, a person with whom the defendant had a dating relationship, by pushing or striking her with the defendant's hand or by pulling her hair to defend himself, and you believe beyond a reasonable doubt that on or about the 27th day of June 2022, the defendant, did intentionally or-knowingly cause bodily injury to Ashton Barrera, a member of the defendant's household, by grabbing her throat, then you will find the defendant guilty of the lesser included offense of assault causing bodily injury to a person with whom the defendant had a dating relationship, alleged to have occurred on June 27, 2022 in Count Two of the Indictment.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of March 2023, the defendant, Jaime Delgadillo, in Tarrant County, Texas, did intentionally or knowingly cause bodily injury to Nicole Reyes, a person with whom the defendant had a dating

25

relationship, by pushing or striking her with the defendant's hand or by pulling her hair, but you do not so find or have a reasonable doubt thereof that on or about the 27th day of June 2022, the defendant, Jaime Delgadillo, did intentionally or knowingly cause bodily injury to Ashton Barrera, a member of the defendant's household, by grabbing her throat, then you will find the defendant guilty of the lesser included offense of assault causing bodily injury to a family or household member alleged to have occurred on March 14, 2023, as charged in Count Two of the Indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty" as charged in Count Two of the Indictment.

The verdict form for count two states:

We, the Jury, find the defendant, Jaime Delgadillo, guilty of the offense of continuous violence against the family as charged in Count Two of the Indictment.

–OR–

We, the Jury, find the defendant, Jaime Delgadillo, guilty of the lesser included offense of assault bodily injury to a family or household member alleged to have occurred on June 27, 2022 as charged in Count Two of the Indictment.

–OR–

We, the Jury, find the defendant, Jaime Delgadillo, guilty of the lesser included offense of assault bodily injury to a family or household member alleged to have occurred on March 14, 2023 as charged in Count Two of the Indictment.

–OR–

We, the Jury, find the defendant, Jaime Delgadillo, not guilty as charged in Count Two of the Indictment.

26

**D.     Definitions of Intentionally and Knowingly**

In his first point of error, Delgadillo argues that the jury charge did not properly tailor the definitions of the mental states to the charged offenses of continuous violence against the family and assault.

**1.     Intentionally and Knowingly**

Intentionally and knowingly are defined by the Texas Penal Code as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE §§ 6.03(a), (b).  The scope of these definitions is limited by the type of offense charged, which depends on the charged offense's conduct element or elements.  *See Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022). There are three conduct elements: (1) nature of conduct, (2) result of conduct, and (3) the circumstances surrounding the offense.  *Id*.  "A trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element."  *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015).

27

Count Two charged Delgadillo with committing the offense of continuous violence against the family by "intentionally or knowingly" causing bodily injury to Reyes and Barrera. Assault causing bodily injury is a result-of-conduct offense. *Id.* at 442.

The State, which concedes that the abstract portion of the charge is erroneous because the terms intentionally and knowingly should have been limited to the result of the conduct element, argues that Delgadillo did not object to the definitions, and was not egregiously harmed by the error.[4] According to the State, Delgadillo was not egregiously harmed by the erroneous definitions of intentionally and knowingly because the application paragraphs properly limited the mental states to the result-of-the-conduct portions of the definitions.

Delgadillo argues he suffered egregious harm because his "mental state was the heart of one of his defensive theories as to the [assaults against Reyes, Juan, and H.V.]. Self-defense was the other. The lack of specific intent was a principal contested issue argued by defense counsel throughout." According to Delgadillo, the erroneous definitions caused him egregious harm because they "impermissibly

---

[4]    The definitions of "intentionally" and "knowingly" should have read: "A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Price v. State*, 457 S.W.3d 437, 443 (Tex. Crim. App. 2015).

28

negated [his] defensive issue and diminished the state's burden and standard of proof."

## 2. *Almanza* Factors

Applying the *Almanza* factors, we disagree the erroneous definitions resulted in egregious harm.

### (1) Entire Jury Charge

The first *Almanza* factor requires that we review the trial court's charge in its entirety. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171).

Delgadillo does not dispute that the application paragraphs of the charge were correctly limited to the result-of-conduct element and properly instructed the jury to find Delgadillo guilty only if it found he did "intentionally or knowingly cause bodily injury." *See Campbell*, 664 S.W.3d at 246 ("In assessing harm resulting from the inclusion of improper conduct elements in the definitions of culpable mental states, [a court] may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge.") (internal quote omitted).

Because the terms "intentionally" and "knowingly" directly modified the phrase "cause bodily injury," "it was obvious that the result of conduct and cause the result language [were] the applicable portions of the full code definitions of

intentionally and knowingly found within the abstract portion of the jury charge." *Id.* at 247–48 (internal quotation omitted).

We agree with the State that because the application paragraphs limited the jury to considering the applicable portions of the definitions, the application paragraphs clarified any ambiguity concerning the mental state required to convict Delgadillo. *Id*. at 248. We also agree with the State that the charge, as a whole, suggests that Delgadillo suffered no actual harm because the application paragraph "helped to ameliorate any error within the abstract portion." *Id.* We thus conclude that the jury charge in its entirety weighs against a finding of egregious harm. *See id.*; *Costilla v. State*, 650 S.W.3d 201, 222 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (holding first *Almanza* factor did not weigh in favor of egregious harm when application paragraphs of charge were properly tailored to result-of-conduct element and "instructed that the jury was to find Costilla guilty only if it found he did 'intentionally, knowingly, or recklessly cause bodily injury'" because language "clarified that Costilla's state of mind with respect to the result—causing bodily injury—was to be the focus of the jury's deliberations and findings"); *see also Arevalo v. State*, 675 S.W.3d 833, 855 (Tex. App.—Eastland 2023, no pet.) (holding first *Almanza* factor did not weigh in favor of egregious harm when "application paragraph of the charge tracks the statutory language for the charged offense [of continuous violence against the family] and properly instructs the jury to apply the

30

applicable culpable mental states *to the result* of Appellant's conduct") (emphasis in original).

### (2) State of the Evidence

The second *Almanza* factor requires us to consider the state of the evidence, including the contested issues and weight of probative evidence. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171).

Although lack of intent was a contested issue at trial, the probative evidence that Delgadillo intentionally or knowingly caused bodily injury to Reyes when he pushed or hit her, or pulled her hair, is substantial and thus demonstrates that Delgadillo was not egregiously harmed by the inclusion of the erroneous definitions of "intentionally" and "knowingly" in the abstract portion of the charge.[5] *See Campbell*, 664 S.W.3d at 248 (stating although "purported error directly relates to the central contested issue at trial," "based on the weight of the probative evidence, this factor actually weighs against a harm determination"); *Costilla v. State*, 650 S.W.3d 201, 223 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (stating weight of evidence supported finding defendant did not suffer egregious harm by erroneous definitions of "intentionally" and "knowingly" when defendant "ha[d] not

---

[5]     Delgadillo did not argue at trial that he did not intentionally or knowingly grab Barrera's throat on June 27, 2022. Rather, Delgadillo denied choking Barrera and argued that Barrera's injuries were sustained during an altercation on June 14, 2022 when she was assaulted and tazed by Reyes and Delgadillo's sister.

challenged the legal sufficiency of the evidence as to the offense of conviction. Nor could he successfully do so.").

Reyes testified that Delgadillo becomes "very violent," loses control, and lashes out at anyone near him when he drinks alcohol, and Juan testified that Delgadillo loses control when he drinks. She testified Delgadillo pushed her hard enough in the face to give her a nosebleed and cause her to fall to the floor, hurting her and making her "a little disoriented." Thereafter, while Delgadillo was being held down and Reyes was talking to the 911 operator, Delgadillo grabbed Reyes' hair and ripped a portion of it out, making her cry out. According to Juan, Delgadillo was upset that Reyes had taken away the bottle of alcohol that he had been drinking from and gave it to Juan, and Delgadillo "wanted to fight" him and Reyes. H.V. testified that she saw Delgadillo hit Reyes in the face and cause her nosebleed, and H.V. knew he did it on purpose because he was "looking at [Reyes] and he just seemed mad." Police photographs showed Reyes' bloody nose and the purported bald spot on her head where Delgadillo had pulled out a clump of her hair, and showed Delgadillo in custody, still holding a clump of Reyes' hair.

In addition to the charged offenses, the jury heard evidence that in February 2022, Delgadillo, who was upset and had been drinking, pulled Reyes' hair when she was driving him to his mother's home, and he punched Barrera in the face after she took his cell phone from him. Barrera also testified that Delgadillo had bit her

thigh and punched her in her collarbone in March 2022 after he had been drinking. Delgadillo testified that he had been drinking those days and did not remember doing any of those things.

From this evidence and H.V.'s, Reyes', and Juan's testimony regarding Delgadillo's behavior on March 14, 2023, the jury could have reasonably inferred that Delgadillo wanted to fight with Reyes after she took away his alcohol, and he intentionally or knowingly caused bodily injury when he pushed or hit her in the face and pulled her hair out.

The jury could also infer that Delgadillo intentionally or knowingly caused Reyes bodily injury from the extent of her injuries and the amount of force Delgadillo used against her. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (stating in assaultive situations, culpable mental state can be inferred from extent of victim's injuries); *Lane v. State*, 763 S.W.2d 785, 788 (Tex. Crim. App. 1989) (stating jury could reasonably infer from force used in assault that defendant was aware his conduct was reasonably certain to cause physical pain and bodily injury).

Delgadillo argues that he lacked the specific intent to cause harm with respect to the March 2023 assaults, including the assault against Reyes, because Reyes', Juan's, and H.V.'s "injuries occurred in his attempt to get away" from them. Although there is testimony that Delgadillo was wrestling with Juan when he

33

punched Juan in the head, and he bit H.V.'s hand as she tried to wrestle him to the ground, the evidence reflects that Delgadillo pushed or struck Reyes with his hand before the physical altercation with Reyes, Juan, and H.V. There is no evidence that anyone tried to restrain Delgadillo until after he hit Reyes in the face. Furthermore, Delgadillo's testimony that he did not "set out" to intentionally or knowingly assault Reyes is of no probative value because intent may be formed in the moments of the offense. *See Miller v. State*, No. 12-16-00296-CR, 2017 WL 6350025, at *5 (Tex. App.—Tyler Dec. 13, 2017, pet. ref'd) (mem. op., not designated for publication).

With respect to the June 27, 2022 incident involving Barrera, Delgadillo did not argue at trial that he did not intentionally or knowingly grab Barrera's throat. Rather, Delgadillo denied choking Barrera and argued that Barrera's injuries were sustained during an altercation on June 14, 2022, when she was assaulted and tazed by Reyes and Delgadillo's sister. To the extent Delgadillo argues on appeal that he was harmed by the erroneous definitions of intentionally and knowingly with respect to the assault against Barrera, there is substantial probative evidence that Delgadillo acted intentionally or knowingly when he grabbed Barrera by the throat. Barrera, who provided extensive testimony with respect to the assault, testified that Delgadillo accused her of cheating and started drinking when he came home from work at 7 a.m. on June 27, 2022. According to Barrera, Delgadillo tried to argue with her and accused her of cheating until he eventually fell asleep in the bedroom.

34

When Delgadillo woke up, he dragged Barrera to their room by her wrist and began insulting her and he would not let her leave. After Barrera laid down on the bed, he pulled her over until she was on her back, and then he jumped on Barrera's stomach, put his hands on her throat, and squeezed until she could not breathe. She testified that Delgadillo placed one hand on the base of her neck and pushed her downward, wrapped the other hand around her throat, and squeezed it for about a half a minute until she was able to push him off of her. Barrera could not breathe while Delgadillo had his hands on her throat, and she testified that it hurt when he squeezed.

After she pushed Delgadillo away, Barrera ran to the bathroom where she started hyperventilating and threw up. Delgadillo followed her to the bathroom and shoved her against the wall, but she was able to get away again by pushing him into the bathtub. Barrera ran through the kitchen and into the backyard. H.V. testified that she saw Barrera going outside on June 27, 2022, and Barrera, who was crying and out of breath, was "trying to talk but she couldn't."

Photographs were admitted into evidence reflecting scratches on Barrera's neck from the attack, and although Delgadillo argued at trial that Barrera's injuries were from a previous altercation with Reyes, Barrera testified that she did not have any marks or scratches on her neck before Delgadillo choked her on June 27, 2022, and she testified that Reyes never hit her neck. Reyes admitted to hitting Barrera in the face, but she denied grabbing Barrera's throat or trying to strangle Barrera.

35

Based on this evidence, the jury could reasonably infer that Delgadillo intentionally or knowingly caused Barrera bodily injury from the extent of her injuries and the amount of force Delgadillo used against her.

We conclude the second *Almanza* factor weighs against a finding that Delgadillo suffered egregious harm as a result of the erroneous definitions of intentional and knowing in the abstract portion of the jury charge.

### (3) Arguments of Counsel

The third *Almanza* factor requires us to consider the arguments of counsel. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171). Neither side's opening arguments addressed Delgadillo's self-defense claim or included any notable discussion of the applicable *mens rea* for the charged offenses of continuous violence against the family and assault. The State's closing argument focused on the credibility of the witnesses, including Delgadillo's lack of credibility. Although Delgadillo's closing argument focused on whether he acted in self-defense when he assaulted H.V., Juan, and Reyes on March 14, 2023, counsel also addressed to a lesser degree whether Delgadillo acted intentionally or knowingly when he assaulted H.V., Juan, and Reyes. With regard to the culpable mental state required to find him guilty of continuous violence against the family and the lesser included offense of assault, Delgadillo's counsel stated:

> Pay particular attention, I'm going to ask you, to those words
> intentionally and knowingly, because that's what it takes to make an

assault. I intentionally punched somebody. I intentionally bit somebody. I knew what I was doing and I wanted the result to happen.

Look at the definitions. Does that apply to the brawl? I pose to you that it doesn't.

Although Delgadillo's closing argument focused on his self-defense claim, these statements likely exacerbated the errors in the abstract portion of the charge by drawing the jury's attention to the overly broad definitions of intentional and knowing. Counsel also reenforced the faulty notion the State could meet its burden of proving Delgadillo acted intentionally with evidence Delgadillo had a "conscious objective or desire" to hit or push Reyes, or pull Reyes' hair (nature of conduct), *or* cause bodily injury to Reyes (result of conduct).

Because Delgadillo's closing argument likely exacerbated the error and neither the State's nor Delgadillo's other arguments tended to ameliorate or further exacerbate any harm caused by the error, we conclude this factor weighs slightly in favor of finding that Delgadillo suffered egregious harm. *See Arevalo*, 675 S.W.3d at 855 (stating factor requires appellate court to consider whether statements made by State, defense counsel, or trial court exacerbated or ameliorated complained-of charge error).

### (4) Any other relevant information revealed by the record of the trial record as a whole.

The fourth *Almanza* factor requires us to consider any other relevant information revealed by the record of the trial as a whole. *See Villarreal*, 453 S.W.3d

37

at 433 (citing *Almanza*, 686 S.W.2d at 171); *Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013) (describing fourth *Almanza* factor as "broad 'catch-all' category"). During voir dire, the State showed a slide to the venire panel with definitions of intentionally and knowingly:

> So intentionally, for those of you who can't read my slide, is the conscious objective or desire to engage in the conduct or cause the result. And knowingly is aware that his conduct is reasonably certain to cause the result.

The State then provided examples of someone intentionally and knowingly causing pain by pouring hot coffee on someone else.

> You're waiting, you're impatient, and you take that cup of coffee and you think, you know what, I'm done with this, it's not scalding but it's hot, and you dump it on the person in front of you. . . [Y]ou intentionally poured that coffee on somebody in front of you, right? That was your intent to do that and you did it. Pretty clear, right?

> Let's say you were in that same line, you know, people are stacking up behind you, and you take that same cup of coffee, not scalding but hot, and you decide to just pour—toss it behind you. Well, I didn't mean to get—to get them hot or cause them pain. I didn't know they were back —yes, you did.

> You knew they were behind you. You may not have intended to cause pain to that person right behind you, but you were aware that your conduct was reasonably certain to cause the result.

The record reflects that the jury did not inquire or submit any note or other form of communication to the trial court regarding the definitions of intentionally and knowingly, and the jury returned its verdicts of guilty on all three counts of continuous violence against the family in one hour. *See Arevalo*, 675 S.W.3d at 856

38

(stating "it is unlikely that the jury was influenced or confused by the trial court's instructions" when jury did not inquire about complained-of definition); *id.* (stating fact "jury returned its verdict of guilty after deliberating for less than twenty minutes" on one charge of continuous violence against the family "suggests that they found the State's evidence to be compelling and Appellant's defenses to be unpersuasive"). Even if the State's comments during voir dire may have exacerbated the harmfulness of the erroneous definition of intentionally to include the nature of conduct element (having a "conscious objective or desire to *engage in the conduct*"), the jury's short deliberation period and lack of questions about the charge—in conjunction with the substantial evidence set forth above supporting that Delgadillo intentionally or knowingly caused bodily injury to Reyes and Barrera—indicate that the jury likely was not confused by or influenced by the erroneous definitions.

Considering these facts as a whole, we conclude that the fourth *Almanza* factor is neutral regarding whether Delgadillo suffered egregious harm as a result of the erroneous definitions of intentionally and knowingly provided to the jury in the charge's abstract paragraphs. *See Arevalo*, 675 S.W.3d at 856; *Costilla*, 650 S.W.3d at 222.

Based on this record and considering all four *Almanza* factors, we conclude that Delgadillo did not suffer egregious harm resulting from the overbroad and non-tailored definition of the culpable mental states in the abstract portion of the trial

court's jury charge, and any harm was likely theoretical. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171); *see generally Alcoser*, 663 S.W.3d at 171 (stating *Almanza* forbids "the windfall of a new trial based on only theoretical harm").

We overrule Delgadillo's first issue.

## Lesser Included Offenses and Self-Defense

In his second, third, and fourth issues, Delgadillo argues there are multiple errors in the application portion of the charge applying the law and facts to the lesser included offenses of assault against Barrera and Reyes and Delgadillo's self-defense claim.

In his second issue, Delgadillo argues the trial court erred by "selectively giving a converse charge on one underlying assault and not the other." According to Delgadillo, the trial court erred because the jury charge instructed the jury that if they did not believe the assault against Barrera occurred beyond a reasonable doubt, or if they had a reasonable doubt thereof, and they believed the assault against Reyes occurred beyond a reasonable doubt, they were to find Delgadillo guilty of the lesser offense of the assault against Reyes, but the jury was not given the converse charge. In other words, the jury was not instructed that if they did not believe the assault against Reyes occurred beyond a reasonable doubt, or if they had a reasonable doubt thereof, and they believed the assault against Barrera occurred beyond a reasonable

40

doubt, they were to find Delgadillo guilty of the lesser offense of the assault against Barrera.

In his third and fourth issues, Delgadillo argues that the charge incorrectly instructed the jury on the lesser included offenses of assault and the law of self-defense. According to Delgadillo, the trial court erred by failing to (1) instruct the jury to acquit Delgadillo of the greater offense of continuous family violence if the jury "did not find [the assault against Reyes and the assault against Barrera] beyond a reasonable doubt with the attendant benefit of the doubt instruction," (2) instruct the jury to acquit him of continuous family violence if they believed he was acting in self-defense when he assaulted Reyes, (3) require the State to disprove Delgadillo's self-defense claim beyond a reasonable doubt in the application portion of the charge, and (4) include an explicit "modified acquittal first" instruction instructing the jury that they had to deliberate on the greater offense of continuous family violence and acquit Delgadillo of that offense before returning a verdict on the lesser offense of assault.

Delgadillo argues that he was egregiously harmed by the trial court's failure to properly instruct the jury on the law of the lesser included offense because "it was a comment on the evidence by directing a finding of guilt of one assault, was a misstatement of the law misdirecting the jury, diminished the state's burden to prove each assault by presuming guilt of one, and denied [him] the benefit of the doubt

41

instruction." Delgadillo argues that by instructing the jury to find him guilty of the lesser offense of assault against Reyes if they believed the State had proved the assault against Reyes, but they did not so believe or had reasonable doubt that the State had proven the assault against Barrera, but not instructing the jury to find him guilty of the lesser offense of assault against Barrera if they believed the State had proved the assault against Barrera, but they did not believe or had reasonable doubt thereof that the State had proven the assault against Reyes, the charge "left the impression the [assault against Reyes was] proven beyond a reasonable doubt." According to Delgadillo, the omission of this instruction resulted in "a comment on the evidence and the negation of the possibility of a finding of a reasonable doubt as to" Reyes.

Delgadillo argues that he was egregiously harmed by the trial court's failure to properly instruct the jury on the law of self-defense because the charge errors "negated an acquittal [of continuous family violence] based upon self-defense, was a comment on the evidence by none-the less-directing a finding of guilt of the other assault and was a misstatement of the law that misdirected the jury." According to Delgadillo, the charge "negated [his] ability to present his defense" because it "did not require acquittal where self-defense was found nor require the state to disprove it."

The State argues that even if the trial court erred in charging the jury on the law of self-defense and the lesser included offense, Delgadillo was not egregiously harmed by the errors. We agree.

## A.    Almanza Factors

Assuming, without deciding, that the trial court erred in applying the law and facts to the lesser included offenses of assault against Barrera and Reyes and Delgadillo's self-defense claim, as Delgadillo contends, applying the *Almanza* factors, we conclude Delgadillo did not suffer egregious harm as a result.

### 1.    Entire Jury Charge

The first *Almanza* factor requires that we review the trial court's charge in its entirety. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171).

The abstract portion of the charge correctly defined the elements of the offenses of continuous family violence and assault, and instructed the jury that it was the State's burden to prove each element beyond a reasonable doubt, and if they had reasonable doubt as to any element of an offense, they had to acquit Delgadillo of that offense. The charge also instructed the jury that if they agreed that the State had proved beyond a reasonable doubt each element of continuous family violence, they then had to consider whether Delgadillo's use of force was made in self-defense. The abstract portion also correctly charged the jury on the law of self-defense and stated that Delgadillo did not have the burden to prove he acted in self-defense and

43

instead it was the State's burden to prove beyond a reasonable doubt that self-defense did not apply to Delgadillo's conduct.

In the application paragraphs for count two, the jury was instructed that if they found the State had proven beyond a reasonable doubt that Delgadillo assaulted Reyes and Barrera as charged in the indictment, they were to find Delgadillo guilty of continuous family violence. The jury was also instructed that if they did not find that the State proved both assaults beyond a reasonable doubt, or if they had a reasonable doubt thereof, then they were to find Delgadillo not guilty of continuous family violence.

The application paragraphs on the greater offense of continuous family violence are followed immediately by a paragraph applying the law and facts to the lesser included offense of assault against Barrera. The self-defense instruction in the application section of the charge is included in this same paragraph. This paragraph is immediately followed by the paragraph applying the law and facts to the lesser included offense of assault against Reyes.

The verdict form for count two contained a separate line for the jury to find Delgadillo guilty of continuous family violence, guilty of the lesser included offense of assault against Reyes, or guilty of the lesser included offense of assault against Barrera. It did not contain separate lines for the jury to acquit Delgadillo of each offense but rather contained one line finding Delgadillo "not guilty" as charged in

the indictment for count two. In other words, the jury could find Delgadillo guilty of continuous family violence, guilty of assault against Reyes, guilty of assault against Barrera, or not guilty of all three offenses.

The trial court read the entire charge to the jury prior to the jury's deliberations.

The application paragraph on the greater offense of continuous family violence, which precedes the paragraph on the lesser included offense of assault against Reyes, states that to find Delgadillo guilty of continuous family violence, the jury had to find beyond a reasonable doubt that Delgadillo committed the assault against Reyes in March 2023 and the assault against Barrera in June 2022. Furthermore, the application paragraph on the lesser included offense of Barrera's assault instructed the jury that if they found the assault against Reyes had been proven beyond a reasonable doubt, but they also found in favor on the Delgadillo on his self-defense claim, and they found the assault against Barrera had been proven beyond a reasonable doubt, they should find Delgadillo guilty of the lesser included assault against Barrera. Thus, although the jury was not instructed to find Delgadillo guilty of the lesser included offense of assault against Barrera if they found the assault against Barrera had been proven beyond a reasonable doubt, but they did not find beyond a reasonable doubt, or had reasonable doubt that Delgadillo assaulted Reyes, the absence of this instruction did not deprive the jury of the opportunity to

45

find that the State failed to prove beyond a reasonable doubt that the assault against Reyes occurred or leave the impression with the jury that the assault against Reyes was proven beyond a reasonable doubt as Delgadillo argues.

Although the charge did not expressly instruct the jury to acquit Delgadillo of continuous family violence if they believed he was acting in self-defense when he assaulted Reyes, the charge instructed the jury that if they agreed that the State had proven beyond a reasonable doubt each element of the offense of continuous family violence, they "must next consider whether the defendant's use of force was made in self-defense." The self-defense instruction is included in the same paragraph as the lesser included offense of assault against Barrera. The jury was also instructed that if they found Delgadillo's use of force against Reyes was made in self-defense, the only offense they could potentially convict him of was the lesser included assault against Barrera. A conviction of this lesser included offense predicated on a finding in favor of Delgadillo's self-defense claim is an implicit acquittal on the greater offense of continuous family violence. *See generally Grey v. State*, 298 S.W.3d 644, 647 (Tex. Crim. App. 2009) (stating conviction on lesser included offense operates as acquittal on greater charged offense).

Furthermore, because the abstract portion of the charge told the jury that it was the State's burden to disprove Delgadillo's self-defense claim beyond a reasonable doubt and the trial court read the entire charge to the jury prior to

46

deliberations, the jury was thus aware of the State's burden of proof even though it was not included in the application paragraph. There is nothing in the record indicating that the jury did not hold the State to its burden to prove each offense beyond a reasonable doubt or persuade the jury that Delgadillo did not act in self-defense. *See Rankin v. State*, 617 S.W.3d 169, 181–82 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (stating that when defendant raises self-defense, State must prove essential elements of offense beyond reasonable doubt and persuade jury that defendant did not act in self-defense and "the State bears the burden of persuasion to negate self-defense by proving its case beyond a reasonable doubt").

The charge, read as a whole, thus left "no uncertainty as to how to resolve any doubt" the jury had about whether the State proved beyond a reasonable doubt the assault against Reyes and the assault against Barrera and persuaded the jury that self-defense did not apply to Delgadillo's conduct. *See Villarreal v. State*, No. 05-13-00629-CR, 2014 WL 3056509, at *10 (Tex. App.—Dallas July 7, 2014, no pet.) (mem. op., not designated for publication) ("Failure to include a 'benefit of the doubt' instruction is not harmful to the defendant, however, if the charge as a whole leaves no uncertainty as to how to resolve any doubt."); *see also Kihega v. State*, 392 S.W.3d 828, 837 (Tex. App.—Texarkana 2013, no pet.) (holding omission of "benefit of the doubt" instruction harmless when "the charge provided for consideration of alternative lesser crimes and authorized consideration and

47

conviction on one of those lesser offenses if the jury had reasonable doubt as to the primary charged offense"); *see also Rankin*, 617 S.W.3d at 182 (noting "the State bears the burden of persuasion to negate self-defense by proving its case beyond a reasonable doubt").

"Jury instructions that tell the jury when and how to proceed from deliberating about a greater offense to deliberating about a lesser-included offense are sometimes called 'transitional instructions.'" *Sandoval v. State*, 665 S.W.3d 496, 532 (Tex. Crim. App. 2022). A "modified acquittal first" instruction is one such transitional instruction. A "modified acquittal first" instruction allows the jury to "deliberate in the order it sees fit but require[es] that it acquit the defendant of the greater offense before returning a verdict on the lesser offense." *Id.* at 537. A conviction on one of the lesser included offenses in this case effectively acquits Delgadillo of the greater charged offense of continuous family violence. *See Grey*, 298 S.W.3d at 647 (stating conviction on lesser included offense operates as acquittal on greater charged offense). We thus fail to see how the lack of a "modified acquittal first" instruction in this case could have harmed Delgadillo, much less resulted in egregious harm.

We conclude the first *Almanza* factor weighs against a finding that Delgadillo suffered egregious harm.

## 2.    State of the Evidence

The second *Almanza* factor requires us to consider the state of the evidence, including the contested issues and weight of probative evidence. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171).

With respect to the assault against Barrera on June 27, 2022, Barrera testified that she and Delgadillo had been arguing all day when he pulled her into their bedroom and would not let her leave. After she laid down on the bed with her back towards him, Delgadillo pulled her onto her back, jumped onto her stomach while she was four months pregnant, and grabbed her throat, wrapped his hand around it, and squeezed it for about a half a minute, causing her pain and preventing her from breathing. Delgadillo did not argue that he did not intentionally or knowingly grab Barrera's throat on June 27, 2022, or that he acted in self-defense. Rather, Delgadillo denied choking Barrera and argued that Barrera's injuries were sustained during an altercation on June 14, 2022, when Reyes assaulted Barrera. Barrera testified that she sustained facial injuries as a result of the altercation with Reyes, but she denied that Reyes hit her neck or having any marks or scratches on her neck before Delgadillo choked her on June 27, 2022. Reyes, who admitted to hitting Barrera in the face, testified that she never grabbed Barrera's throat or tried to strangle Barrera. There is thus substantial probative evidence that Delgadillo assaulted Barrera by grabbing her throat on June 27, 2022, as alleged in the indictment.

49

Although Delgadillo denied hitting or pushing Reyes in the face on March 14, 2023, Reyes testified that Delgadillo hit her in the face when she tried to walk into the bedroom, and Juan and H.V. testified that they saw Delgadillo hit Reyes in the face. Reyes testified that it hurt when Delgadillo hit her in the face and gave her a nosebleed and caused her to fall to the floor. Photographs of Reyes' injuries were admitted into evidence. On cross-examination, Delgadillo testified that he was not claiming that he hit Reyes in self-defense, and he agreed that he did not remember hitting her or why he did it. As previously discussed, there is substantial probative evidence that Delgadillo had a "conscious objective or desire" to cause bodily injury to Reyes and he was aware that his conduct was reasonably certain to cause her bodily injury when he pushed or struck her with his hand.

We conclude the second *Almanza* factor weighs against a finding that Delgadillo suffered egregious harm.

### 3. Arguments of Counsel

The third *Almanza* factor requires us to consider the arguments of counsel. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171). The State's closing argument focused on the greater offense of continuous family violence, and it did not discuss the jury charge or specifically address the lesser included offenses involving Barrera, Reyes, Juan, or H.V. Rather, the State argued that the jury should find Delgadillo guilty of all three counts of continuous family violence and reject

50

Delgadillo's claim to have acted in self-defense when he assaulted H.V., Juan, and Reyes on March 14, 2023. The State focused on the credibility of the witnesses and argued that Delgadillo refused to accept responsibility for his actions. According to the State, Delgadillo blamed Reyes, Juan, and H.V. for the injuries they suffered on March 14, 2023, because "he was afraid," even though Delgadillo "had already struck [Reyes and Juan] before what the Defense refers to as a brawl started."

The defense's closing argument focused on whether Delgadillo acted in self-defense when he assaulted H.V., Juan, and Reyes on March 14, 2023, and to a lesser degree on whether Delgadillo had the requisite *mens rea* during the incident on March 14, 2023. With regard to Delgadillo's claim that he acted in self-defense, defense counsel argued that Delgadillo's family had been arguing with him all day and griping at him for his drinking, and Delgadillo tried to retreat to his bedroom, but his family followed him.

> And they're treating him like a recalcitrant five-year-old. And they're arguing with him. And his father's threatening him. And his father's hit him before. [Reyes] is still arguing with him. He just wants to leave, again. That's what he's saying, let me go, let me go, let me go. And what's their answer to that? We grabbed him. We grabbed him. We're going to put him on the floor. We're going to restrain him. We're not going to let him—we're going to hold him, you know, so he can go to bed. That's what we're going to do.
>
> And now in his intoxicated state, it's only logical that he feels threatened. People won't let me go. They're holding me. They're trying to put me on the ground. . .

51

This wasn't an assault on the part of one person. At the very least this was a brawl, folks. This was a brawl. [Delgadillo] had every right to feel threatened. People were jumping on him and holding him on the ground.

With respect to the June 2022 incident involving Barrera, Delgadillo's counsel did not argue that Delgadillo had acted in self-defense or that he lacked the requisite *mens rea*. He argued instead that the mere fact Delgadillo had signed the protective order did not mean he admitted to choking Barrera or putting his hands around her neck.

Delgadillo's counsel also discussed the jury charge and the lesser included offense of assault:

> The State wants you to convict him of a felony [continuous violence against the family] and send him to the penitentiary over it. You got to ask yourself, is that the right answer, is that what really is fitting here.
>
> This jury charge gives you options. It's put together a little bit like a jigsaw puzzle. We worked long and hard to get it down as simple as it was.
>
> If you believe on the 14th of March that this was a brawl and that [Delgadillo] felt threatened, you don't have to convict him of assault on that day. And you can still convict him of something. You can convict him of a misdemeanor [assault], which still carries a penalty, a jail penalty.

In other words, defense counsel told the jury they should not convict Delgadillo of the continuous family violence if they believed he did not act knowingly or intentionally and thus lacked the requisite *mens rea* ("this was a brawl") or if they believed Delgadillo acted in self-defense when he assaulted Reyes, Juan, and H.V.

52

("[Delgadillo] felt threatened"). The jury was further instructed that if they found Delgadillo not guilty of the greater offense of continuous family violence because he either lacked the requisite *mens rea* when he assaulted Reyes, Juan, and H.V. on March 14, 2023 or acted in self-defense that day, they could still find him guilty of the lesser included offense of misdemeanor assault against Barrera.

Neither party's opening statements addressed Delgadillo's self-defense claim or the lesser included offenses of assault, and their closing arguments did not address the burden of proof for a self-defense claim. Neither the State's nor Delgadillo's opening statements and closing arguments exacerbated the assumed charge errors, and Delgadillo's closing arguments tended to ameliorate at least some of the errors.

We thus conclude that the third *Almanza* factor weighs slightly against a finding that Delgadillo suffered egregious harm or at a minimum is neutral with respect to egregious harm.

### 4. Any Other Relevant Information

The fourth *Almanza* factor requires us to consider any other relevant information revealed by the record of the trial as a whole. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171).

The trial court read the entire jury charge to the jury prior to closing arguments and jury deliberation and the charge correctly instructed the jury on the law of self-defense in the abstract paragraphs, including the State's burden to "prove,

beyond a reasonable doubt, that self-defense does not apply to [Delgadillo's] conduct," and that "if you all agree the state has proved, beyond a reasonable doubt, each of the elements listed above for the offense of continuous violence against the family, you must next consider whether the defendant's use of force was made in self-defense." The jury charge also contained the charged offenses of continuous family violence and the lesser included offenses of assault against Reyes and Barrera. Because the jury entered deliberations with this information, it is unlikely the jury did not hold the State to its burden or otherwise convict on an improper basis. *See Sandoval*, 665 S.W.3d at 538 (holding fourth *Almanza* factor weighed against finding of egregious harm as when "jury charge was read in its entirety before closing arguments and jury deliberations").

The record also reflects that the jury never inquired of or submitted any note or other form of communication to the trial court regarding law of continuous family violence, the lesser included offenses of assault, or self-defense, or their application to the facts in Delgadillo's case. *See Arevalo*, 675 S.W.3d at 856 (stating "it is unlikely that the jury was influenced or confused by the trial court's instructions" when jury did not inquire about complained-of error). The fact that the jury returned its verdicts of guilty on all three counts of continuous violence against the family in one hour also indicates that Delgadillo was not egregiously harmed by the error. *See id.* (stating fact "jury returned its verdict of guilty after deliberating for less than

54

twenty minutes" on one charge of continuous violence against the family "suggests that they found the State's evidence to be compelling and Appellant's defenses to be unpersuasive"). We thus conclude that the fourth *Almanza* factor weighs against a finding that Delgadillo suffered egregious harm as a result of charge errors.

Based on this record and considering all four *Almanza* factors, we conclude that Delgadillo did not suffer egregious harm resulting from any improper instructions on the law of the lesser included offense of assault and self-defense and that any harm was likely theoretical. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171); *see generally Alcoser*, 663 S.W.3d at 171 (stating *Almanza* forbids "the windfall of a new trial based on only theoretical harm").

We overrule Delgadillo's third and fourth issues.

### Cumulative Harm

Delgadillo argues that even if he did not suffer egregious harm as a result of any one charge error, the cumulative harm of these errors was egregious.

When a jury charge contains multiple errors, appellate courts may assess the cumulative effect of the errors in determining whether the appellant suffered egregious harm. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("It is conceivable that a number of errors may be found harmful in their cumulative effect."); *see also Alcoser*, 663 S.W.3d at 171 (noting that "it is possible that a synergistic effect based on multiple charge errors in a multi-count jury charge

55

could weigh in favor of finding harm when consideration of the errors in isolation would not").

Delgadillo argues that the charge contains "a hodge-podge of incorrectly defined terms, offenses, and defenses" that "invit[ed] confusion and misdirection" and the "synergistic effect of each of the cumulative errors argued above combined to result in egregious harm." As previously discussed, despite the alleged errors involving the erroneous definitions of intentionally and knowingly and application of the law of lesser included offenses and self-defense, only one *Almanza* factor weighed slightly in favor of finding that Delgadillo suffered egregious harm as a result of the erroneous definitions, and no factor weighed in favor of finding Delgadillo suffered egregious harm as a result of the other alleged errors. After considering the *Almanza* factors discussed above, we conclude that the cumulative effect of the alleged errors demonstrates that any harm to Delgadillo was likely theoretical. *See Alcoser*, 663 S.W.3d at 171 (noting *Almanza* forbids "the windfall of a new trial based on only theoretical harm"); *see also Villarreal*, 453 S.W.3d at 433 (stating egregious harm determination must be based on actual rather than theoretical harm).

## Conclusion

We vacate the portion of the trial court's judgment as to count one and count three, and we affirm the judgment as to count two.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do Not Publish.   TEX. R. APP. P. 47.2(b).